And we will hear argument next in Herrera v. the US CIS. Counsel, you may proceed. Thank you. May it please the Court, I am John B. Bartos of counsel to the Miller Law Offices, arguing on behalf of both plaintiffs. Our position is that this case is a case of first impression before this Court, that the standard used by the district court was wrong, that the standard that should be used or should have been used was otherwise not in accordance with law, and that on the basis of the fact that the court misused the standard, that that right there is an automatic reversal or remand to the district court. The district court needs to review the procedures. It needs to review what CIS must do when it receives a notice of porting from an alien and to what extent the law, 1154J, impacts 1155. It's very clear that Congress intended, from the plain language of the law, to give CIS instructions on a step-by-step analysis. But there's nothing in 1155 which would bar the CIS from revoking a prior approval, is there? It's in 1154J, and it is this. It says that a visa petition shall remain valid. That is a presumption of validity based on the language of the law. So there is an argument there that the new law provides a procedure which must be immediately taken by CIS upon notification of portability. Well, doesn't the phrase shall remain valid suggest that it had to be valid in the first place for it to remain valid just by, again, using the plain term? So if it wasn't valid to begin with, I'm not sure how J helps you. Well, again, I say the language of the law says shall remain valid. Right. That's what I'm asking you about. And by the language of the law, it has to presume that the visa approval was valid. Well, why is that? It seems to me that in the absence of the portability provision, then a preliminary finding that something was valid can be revoked. Absolutely. Okay. Absolutely. And portability, it seems to me, was designed only to help someone along, not penalize them for changing jobs if they were otherwise eligible. But what you're suggesting is that someone can insulate themselves from ever being revoked just by changing jobs. No, I'm not. And that doesn't seem like the right answer either. No, I'm not suggesting that. What I am suggesting is that before CIS takes any action on the visa petition, it must do an 1154J analysis. It must go through and determine, is there an approved visa petition? It must go through and determine, has there been an application filed? It must go through and determine, has that application pended 180 days? If it has and it makes it. Why isn't the first question, was it valid to begin with? Because it starts by saying, shall remain valid. Why isn't that the first question out of the box, under the statutory text? I just don't agree with that. I understand you don't, but I'm trying to understand why. It's just not what Congress intended them to do. There have been three courts of appeal that have already found that this statute is a statute that deals with adjustment of status, not visa petitions, in the Fourth, Fifth, and Sixth Circuit. And therefore, they should be analyzing whether the job is the same or similar, not whether the visa petition is valid. Because if the job isn't the same or similar, all of it goes away anyway. If it is the same and similar, then they can go back and attack the visa petition. Well, why isn't it sort of like a harmless error question? It doesn't matter which one you do first. If it's never valid to begin with, all the rest of it is excess baggage. If it were harmless error, yes. But it isn't in this case because CIS violated all its own rules in handling a revoke, revocation. It completely violated them. It's standard. What it said in its NOIR is restrictive. In other words, it must deal with that. The NOIR talked about her change of job orientation. That's a change of jobs. That, under the 1154J, they should have done an 1154J analysis. They didn't. Second of all, they attacked whether she was eligible. They didn't state that in their NOIR. They stated some vague statement that maybe she wasn't eligible. They never addressed that in their statement. So what they addressed afterwards is completely outside the use of an NOIR by their own regulations and by the law of this court. So it's not harmless error in this case because the 1255 activity simply didn't conform to their own law. Further, it didn't conform to their own guidelines. And as counsel for the government states, and it's on page 25 of their brief, under the Homeland Security Act, judicial differences owe to interpretations. Guidelines are interpretations. And those guidelines in 2001 and 2003 were very specific. They said adjudicate the application for adjustment of status. They didn't say go back and revoke, go back and consider revocation. So CIS at their headquarters even understood that the first step is not to attack the visa petition. The first step is to analyze whether the individual met the steps set forth in the procedure established by the law. Counsel, I think we understand your argument. Maybe this is a good time to let the other side respond and then you have all that reserved time. Thank you, Your Honor. I would appreciate that. Very well. We'll hear from the government. Good morning. May it please the Court. Sharice Pratt for the United States Government Defendants. The United States Citizenship and Immigration Services and Robert Wyman. Whether an alien will be performing primarily managerial and executive duties is an essential element for entitlement to a visa classification of an immigrant, multinational manager or executive. An alien primarily performing the day-to-day operations of a company does not qualify for such a visa classification. A visa of this type is not meant for line supervisors or salespeople. Substantial evidence supports the agency's findings that Ms. Herrera primarily performed operational duties that were part of the job description of an account executive or salesperson. Ms. Pratt, I think what we need to hear is your response to his argument that we should first look at 1154J before we can get to 1155. What is your response? 1154J? The portability provision. Okay. Before you can look at portability, you have to look to see whether the underlying visa petition was valid to begin with. Well, his position is there's nothing that suggests that. I suppose the strongest, your strongest argument is that you can apply 1155 anytime in the process. Yes. But he says that you should start at 1154J and then do a 1155 back look. What's wrong with that? And does it make any difference? It does. Well, it makes a difference because if the visa isn't valid to begin with, then you don't get to the issue of porting it to another. But you issued the visa. Okay. It was valid. I mean, at some point it was valid in the sense that you issued it. And when Ms. Herrera came to be interviewed on her underlying I-485 adjustment application, her statements indicated that she was not performing the requirements, the duties of a multinational manager or executive. That was a requirement for the visa. And that's what they stated in their visa petition. And so when the interviewer asked her about her duties and she described them and they looked at the organization chart and they looked at the petition, the original I-140 petition, there were significant discrepancies. Well, let's look at it this way. When it was issued originally, it may have been a mistake. But until you revoked it, it was valid. Isn't that right? You had to revoke it in order to invalidate it. Isn't that correct? It's correct that they had to revoke it before it could be considered invalid. In order to invalidate it. So it was valid. And then this long time intervened. And the argument is that after a certain time, you no longer had that option. Well, that is not a good argument because if that were the case, then people who were clearly ineligible and filed these visa applications and they were not eligible, statutorily ineligible, could just be granted these visas. Why would you issue the original approval? Well, that was issued in error. I know, but I mean, I assume most of the time you don't make errors. But they are mandated to investigate, to interview the applicant and investigate. If they don't know, why don't they say, hold it, investigate it. Possibly because on the face of the application, it looks like it might meet the requirements for a visa. But then when they interviewed her, they discovered, no, she was not meeting the requirements for that visa. And so then they initiated the process to revoke. And they issued a notice of intent to revoke. And in that notice of intent to revoke, they detailed the specific problems. Well, I don't think there's much argument that if you had the power to do it, you did it properly. But did you reach the point where you didn't have the power? No. No, because a visa can be revoked at any time for good and sufficient cause. And they are mandated to interview the applicant. And that's what they were doing. And that's when they discovered that it had been issued in error. Are we talking about the first position or the second position that she held? We're talking about the first position with Eugen Still. Okay. When they interviewed her, they discovered that it appeared that she had never met the requirements. When they looked at the organizational chart, she did not describe that she was supervising any employees. She described that she was performing the daily, day-to-day operations, going out to the homes, doing the interior design, consulting with more staff. As I read the papers, I think she was trying to say that essentially she was vice president of marketing, that she was the head of the marketing operation. That was her title, but that was not her duties as she described them that day at the interview. She described what a salesperson might do, what the account executive might do, going out and meeting with prospective clients, drafting proposals, coming back, typing them up herself, consulting with more experienced designers, then going back out to the house, telling them, asking them about the, you know, proposing the expenses and giving them her proposals of the interior design. She wasn't supervising someone who did that. She was doing it herself. Anything further, counsel? There are a number of cases that support the government's position. Are they all in the brief? Yes, they are. Fine. I do have one other point. Sure. In matter of TELFIC, matter of esteem, and matter of whole, it is clear that the district director may rely on any relevant evidence and that it's clear that they're referring to both 8 CFR 103.2 or 205.2. They can rely on the rebuttal evidence and the initial evidence. Okay. Thank you, counsel. Thank you. Mr. Barton, you have some reserved time. How do you get around the argument that they can revoke at any time? They admit they made a mistake, but they also have the power to revoke. I'd like to read to the court something that I believe is in the record that was submitted by the government. This is in their 2005 guidelines. It's at page 6, and it's frequently asked question 10. And it says, should service centers or district offices deny portability cases on the sole basis that the alien has left his or her employment with the I-140 petitioner prior to the I-485 application pending for 180 days? The answer is no. And the reason why is very clear, and this is established immigration law. The basis for adjustment is not actual, but prospective employment. Okay. Now, that's the adjustment of status issue. The visa petition has to show two things. From the employer, it has to show that the employer has given a bona fide job offer that meets the requirements. And that the employer intends to hire the alien. And that's all. The fact that she changed jobs is irrelevant to the visa petition. It's relevant to the application for adjustment of status, except under portability. Because when she changed jobs or reoriented her jobs in Juggensdill, she went to being a functional manager, a manager of that one particular function. And they did not analyze that. She fit a functional executive manager. They had to do that. They had to go back and analyze it using 1154J to determine whether it was the same or similar to the job offered in the visa petition. They did not do that. And the revocation simply said, hey, you changed jobs. You're not doing what they said you were doing. That's not a basis for revocation. The basis for revocation is considering all evidence at the time the notice of the NOIR, the notice of intent to revoke, says at the time that this visa petition was approved, taking all the evidence that we have now, it should not have been approved. That was not the basis of the NOIR. The basis of the NOIR was, well, because you had seven employees, you may not have even been eligible. That's not anything solid. That's not notice. That's speculation. Additionally, if you want to go to procedure on the NOIR, at no time … What you're suggesting, then, is kind of a vesting argument. In other words, once the CIS approved, then that's it. You can't revisit the issue. Is that essentially your argument? No, absolutely not. What I'm saying is that under their own law, to revisit the issue, they have to state that they're revisiting the issue in a clear statement. They didn't do that. Now your argument is to the notice, I gather. Yes. All right. Yes, they didn't do that. The notice is deficient. That's why this thing has to go all the way back to the California Service Center. The whole thing was deficient from the start because change of jobs … Let me be sure I understand your argument. When you first took the lectern, I thought your argument was they had to do an 1154J before they could even look at 1155. That is the argument. That is the first argument. Counsel says that … And that is the first issue that this Court must deal with. But then there was a question. Isn't it just harmless error? And the answer is no because the whole procedure that they did with the notice of intent to revoke violated everything in their law, in their regulations. Well, let's assume that the notice itself was perfect and so we can get all those extraneous issues out of it. Let's say they had looked at what you want them to look at first and they had said, you know, this is extremely similar to your previous job, so that's fine. Then they had moved to revoke saying, well, it's similar, but you've never been eligible. That's, I guess, why I don't understand why the order in which they think about it matters if neither the prior job nor the present job, which are similar, allows this status. Well, the question back to the Court is does the law have precedence? And if so, which one? Isn't the more recently passed law the law that has precedence? And so the answer is you have to go through the 1154J analysis based on precedence and then if you decide they are the same or similar, then, yes, you have 1155 authority. But what this new law has done is it has given approved visa petitions in certain areas precedence. It's given them primacy because it's the more recently passed law. And that goes back to my point. You're really arguing vesting somehow or other once you've been issued the visa, the service can no longer take a second look down the road. Is that what you're saying, essentially? No, I'm not saying that. What it does is it vests the right to the 1154J procedure first. Okay. And then we can say, all right, as a matter of law, that's there. Now they come back and they say, all right, we did that, but it was a mistake. Let me give you an example that goes with this case. She goes to Bay Area Bumpers and they get full notice. And CIS goes down and it does a comparison and it says, Jugginsdale, Bay Area Bumpers, similar. Then the adjudicator says, you know what? I have some questions about this visa petition. Can CIS issue an NOIR? Absolutely. But it must attack the visa petition, not the change of employment. Okay. And it didn't in this case. All right. We understand your argument. Thank you, Your Honor. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: Noonan, O'scannlain, Graber